UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KRISTIN MARTINEZ,

                           Plaintiff,

              -against-

ADAMS FAIRACRE FARMS, INC.,

                         Defendant.
----------------------------------------------------------------X

**COMPLAINT**

Civil Action No..:

**JURY TRIAL DEMANDED**

Plaintiff, Kristin Martinez ("Martinez") by her attorneys, MARKUS & SHERIDAN, LLP, as and for her Complaint against Defendant, Adams Fairacre Farms, Inc., alleges, upon information and belief, as follows:

**NATURE OF THE CASE**

1.      Plaintiff is an individual residing at 30 Spruce Lane, Poughkeepsie, New York 12603.

2.      Adams Fairacre Farms, Inc. (hereinafter "AFF" or the "Company"), is a domestic corporation incorporated under the laws of the State of New York with its principal place of business at 765 Dutchess Turnpike, Poughkeepsie, New York 12603.

3.      This is an action for equitable relief and monetary damages to redress Defendant's unlawful employment discrimination against Plaintiff based upon her disability, and interference against her for seeking a reasonable accommodation, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*., as amended by the ADA Amendment Act of

2008, Pub L. 110-325 (collectively the "ADA"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law Article 15 §§ 290, *et seq*.

4.      At all times relevant herein, Plaintiff was an "employee" within the meaning of the ADA and the NYSHRL.

5.      At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA and the NYSHRL.

6.      At all times relevant herein, AFF was an "employer" within the meaning of the ADA and the NYSHRL.

7.      At all times herein, AFF employed and still employs more than 15 employees in the current or preceding calendar year.

## JURISDICTION

8.      Jurisdiction in this Court arises under 28 U.S.C. §1331.  Supplemental jurisdiction is also conferred on this Court pursuant to 28 U.S.C. §1367.  The Plaintiff respectfully requests that this Court exercise jurisdiction over her pendant state law claims.

9.       Injunctive and declaratory relief, damages, and other appropriate legal and equitable relief, are sought pursuant to the ADA and the NYSHRL.

## VENUE

10.      The unlawful employment practices alleged below were committed within the State of New York, County of Dutchess and AFF resides in this judicial district. Accordingly, venue lies in the United States District Court for the Southern District of New York under 28 U.S.C. §1391(b) and (c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     Plaintiff has fully complied with all prerequisites for jurisdiction in this Court under the ADA and the NYSHRL by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission and filing her initial Complaint within ninety (90) days of receipt of the EEOC issuing a notice informing Plaintiff of her rights to sue in federal court. *See*, Exhibit "A" attached hereto.

## STATEMENT OF FACTS

12.     Martinez began her employment with AFF as a cake decorator in the bakery department in October 2019.   Martinez came to AFF with a degree from the Culinary Institute of America in Pastry and Baking Arts and fine catering experience.

13.     On or about November 19, 2019, Martinez suffered a workplace injury when a co-worker struck her arm with a commercial baking tray as a result of minimal working space between them.   Specifically, Martinez suffered a torn ulnar nerve, torn ulnar ligament, and partially torn bicep resulting in loss of feeling in her arm and loss of sensation in two of her fingers and palm of her dominant right hand.

14.     Martinez filed an incident report and a workers' compensation claim as a result of these injuries.   Although Martinez returned to work following the accident, she continued to have substantial pain in her arm and hand while working significant hours during the holidays.   After several more weeks of diagnostic testing, Martinez's treating orthopedist recommended that she consult with an orthopedic surgeon as the pain in her arm and hand had not subsided.

15.     On or about January 13, 2020, Martinez consulted with an orthopedic surgeon Dr. Susan Roberts, who ordered an EMG and recommended six to eight weeks of occupational therapy. At that juncture, as the pain had become too severe for Martinez to perform her job

responsibilities, Dr. Roberts further recommended that due to her disability, Martinez should remain out of work.

16.     Following Martinez's July 13, 2020 appointment with Dr. Roberts, she provided AFF's human resources representative, Jen Giammatteo ("Giammatteo") with her doctor's note. From approximately January 14, 2020 until the end of February, 2020, Martinez attended occupational therapy three times a week at Ivy Rehab in Poughkeepsie, New York.

17.     On February 24, 2020, Martinez saw Dr. Roberts, and after several months of conservative treatment, Martinez's doctors determined that she required surgical intervention to address the nerve damage in her elbow.  Martinez immediately notified Giammatteo about her upcoming surgery on March 17, 2020.

18.     On March 16, 2020, Martinez was notified by New York Presbyterian Hospital that the surgery was cancelled due to COVID-19 restrictions.   Martinez telephoned Giammatteo about this development.  At that time, Giammatteo advised Martinez that if she did not return to work by mid-July 2020, she would be terminated, and subject to rehire, citing AFF's Employee Handbook with no mention of an additional accommodation based on the ADA.  (AFF's Employee Handbook contains a written policy of a 26-week period for a worker's compensation leave subject to the reasonable accommodation requirements under the ADA.)

19.     On March 25, 2020, Martinez wrote to Gaye Mallet, AFF's Vice-President of Human Resources, citing the delay in expected surgery and attendant recovery due to COVID-19 restrictions on elective surgeries.   Mallet acknowledged the unprecedented times and responded that she would revisit the issue with Martinez in June 2020.  This, however, never occurred. *See* email attached as Exhibit "B".

20.     For the next three months, Martinez continued with periodic visits with Dr. Roberts to manage the pain while awaiting a new date for the surgery.

21.     On May 20, 2020, Martinez had an ulnar nerve transposition.  Throughout the next several months, despite continuing with occupational therapy three times a week, Martinez continued to suffer from arm pain with a limitation of arm and hand movement. Indeed, post-surgery Martinez's treating physician advised that she would require further medical treatment.

22.     In July 2020, Martinez spoke to Giammatteo and provided her with a status update on her injuries, and requested additional leave as an accommodation. Giammatteo did not mention a deadline to return to work, nor request that she provide any doctor's note regarding a date certain for her return or any accommodations necessary to perform her essential functions of the job upon her return.  Instead, Giammatteo told Martinez that she would be afforded an additional month of leave due to COVID-19 (and not as part of a reasonable accommodation).

23.     On July 27, 2020, Martinez had a post-operative visit with Dr. Roberts.

24.     On or about July 30, 2020, Martinez's supervisor, Jennifer Lauria ("Lauria") forwarded an email that she received from Giammatteo stating that Giammatteo had heard from its Worker's Compensation carrier that Martinez would need an additional four to six weeks of disability leave.  Giammatteo wrote to Lauria that AFF was going to afford Martinez an additional month of leave until August 14, 2020 due to COVID-19, but concluded that because she would not be returning by August 14, 2020, Martinez would be terminated.  Accordingly, Giammatteo directed Lauria to send in a termination form.

25.     On July 30, 2020, Lauria wrote to Martinez to not worry as she intended to stall the paperwork, and the date of termination.

5

26.     On August 1, 2020, Martinez again spoke to Giammatteo about needing additional leave given the extent of her injuries. Giammatteo stated that "AFF does not allow any employees to return to work unless they are 100% [healed] with no restrictions" and stated that Adams did not have any alternate position or light duty work available.  Martinez reiterated her need for additional four to six weeks of disability leave as an accommodation, as she was completing physical therapy, if she was not permitted to return to work by AFF and if there was no other positions available.  Martinez told Giammatteo that she had a follow-up with Dr. Roberts in early September. Accordingly, Giammatteo told Martinez to follow-up with her after her September appointment (indicating to Martinez that her disability leave was continuing).

27.     On or about August 29, 2020, Martinez came to AFF's, Poughkeepsie store to purchase a cake at the bakery.  Martinez spoke with Lauria who indicated that Martinez was still on AFF's payroll and would be able to provide her with an employee discount for the purchase of the cake.  There was no suggestion by Lauria that Martinez had been terminated.

28.     On September 3, 2020, Martinez had a visit with Dr. Roberts and discussed the need for additional surgery.

29.     On September 16, 2020, Martinez contacted Giammatteo after being notified by her treating oncologist that her health insurance benefits had been cancelled. Giammatteo responded that she was surprised that Martinez's managers had not advised her of her employment termination on August 12, 2020. Giammatteo added that Martinez was supposed to be terminated in July 2020, but due to the COVID-19 pandemic (and not as part of a reasonable accommodation) AFF had extended her employment for an additional month.  Martinez was also told that her health insurance benefits had ceased on August 12, 2020, despite remaining on the payroll through the

end of August 2020.[1]

30.     On the September 16, 2020 phone call, Martinez complained that she had not received any written notice of termination from AFF, nor a COBRA notice, and assumed that she was still on disability leave as she had remained on payroll as an active employee through the end of August 2020, and reminded Giammetteo that she had told her to contact Giammatteo after her September doctor's appointment.  Giammetteo asked her to provide her with the dates in which she went to see her health care providers, and that she would call her back that day.

31.     On September 17, 2020, Martinez finally spoke to Giammatteo after making several calls and leaving voicemail messages.  Giammatteo responded aggressively, denied requesting the dates of medical treatment, and directed Martinez not to contact AFF anymore.

32.     During her period of disability, Martinez continued to undergo treatment for her injuries including periodic visits with an orthopedist and orthopedic surgeon.  Additionally, independent medical examinations conducted by the Workers' Compensation Board have deemed her disabled.   Martinez methodically kept AFF informed of the status of her disability during the entire period of her disability leave. AFF clearly had notice of her disability.

33.     Despite sufficient notice, on August 12, 2020, AFF summarily terminated Martinez's employment by refusing to provide additional disability leave as a reasonable accommodation, failing to request Martinez's return upon a date certain,  requiring that Martinez's treating physicians opine as to the date of her return, inquire if there was any necessary reasonable accommodation by AFF when she returned to work (indeed, it refused to allow her to return to work by telling her that she needed to be 100% healed), or detail how or if her continued disability leave would be an undue hardship.  In other words, AFF did not engage in the required good-faith

---

[1] Giammatteo had originally proposed an August 14, 2020 termination date to Martinez's supervisor.  Thus, even if AFF arguably gave Martinez until August 14, 2020 to return to work, AFF terminated her beforehand.

inquiry under federal or state law to address a reasonable accommodation for her disability. Instead, it terminated Martinez's employment unlawfully.

## FIRST CAUSE OF ACTION FOR UNLAWFUL DISABILITY DISCRIMINATION UNDER THE ADA

34.     The acts committed by AFF as set forth at length in paragraphs "1" through "33" of this Complaint, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Martinez in violation of the ADA based on her actual and/or perceived disability.

35.     The acts and conduct complained of herein took place as a result of Martinez's membership in a protected class and all took place while Martinez was an employee of AFF and/or in the course of her AFF employment.

36.     The acts and conduct complained of herein supporting Martinez's claims for discrimination were committed by AFF personnel, for whose acts the AFF is liable.

37.     The acts and conduct complained of herein supporting Martinez's claims for discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment.

38.     As a direct and proximate result of AFF's conduct, Martinez has suffered, and will continue to suffer, from among other things, a significant loss of income, benefits, and additional losses associated with the effects of the AFF's conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

39.     AFF's discriminatory conduct so degraded Martinez physically, mentally, and emotionally that, as a proximate result of the AFF's violation of her civil rights, Martinez has

8

suffered, and will continue to suffer, among other things, mental and emotional injuries.

40.     Further, AFF's discriminatory practices were done with malice and/or reckless indifference to Martinez's protected rights, such that, in addition to all the measures of relief cited herein to which Martinez is entitled, AFF should be required to pay punitive damages as punishment for its vile, indecent, and reprehensible conduct, in order to deter AFF and others similarly situated from such conduct in the future.

41.     As a direct and proximate result of the AFF's violation of Plaintiff's rights under the ADA, AFF is liable to Plaintiff for back pay, actual damages for loss of wages and benefits, and  compensatory and punitive damages in an amount to be determined at trial, pursuant to 42 U.S.C. § 1981a (a)(2) and 42 U.S.C. § 1981a (b).

42.     As a direct and proximate result of the AFF's violation of Plaintiff's rights under the ADA, AFF is further liable to Plaintiff for attorney's fees, and other equitable and/or declaratory relief pursuant to 42 U.S.C. § 1981a (a)(2).

43.     Plaintiff therefore seeks judgment against AFF on the First Cause of Action for back pay, actual damages for loss of wages and benefits, compensatory damages, and punitive damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief.

## SECOND CAUSE OF ACTION FOR UNLAWFUL ADA INTERFERENCE

44.     The acts committed by AFF as set forth at length in paragraphs "1" through "33" of the Complaint, which are all deemed part of this cause of action, constitute unlawful interference against Martinez in violation of her rights under ADA, specifically 42 U.S.C. §12203(b).

45.     The acts of which Martinez complains of herein supporting her claim for interference under 42 U.S.C. §12203(b) took place as a result of her requests for a reasonable accommodation for her actual and/or perceived disability, including but not limited to an additional

four to six weeks of disability leave and her ultimate employment termination.

46.     As a direct and proximate result of AFF's unlawful conduct, Martinez has suffered, and will continue to suffer, from among other things, a significant loss of income, benefits, and additional losses associated with the effects of AFF's conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

47.     AFF's conduct so degraded Martinez physically, mentally, and emotionally that, as a proximate result of AFF's violation of her civil rights, Martinez has suffered, and will continue to suffer, among other things, mental and emotional injuries.

48.     Further, AFF's discriminatory practices were done with malice and/or reckless indifference to Martinez's protected rights, such that, in addition to all the measures of relief cited herein to which Martinez is entitled, AFF should be required to pay punitive damages as punishment for its vile, indecent, and reprehensible conduct, in order to deter AFF and others similarly situated from such conduct in the future.

49.     As a direct and proximate result of AFF's violation of Plaintiff's rights under the 42 U.S.C. §12203(b), AFF is liable to Plaintiff for back pay, actual damages for loss of wages and benefits, and compensatory and punitive damages in an amount to be determined at trial, pursuant to 42 U.S.C. § 1981a (a)(2) and 42 U.S.C. § 1981a (b).

50.     As a direct and proximate result of AFF's violation of Plaintiff's rights under the 42 U.S.C. §12203(b), AFF is further liable to Plaintiff for attorney's fees, and other equitable and/or declaratory relief pursuant to 42 U.S.C. § 1981a (a)(2).

51. Plaintiff therefore seeks judgment against AFF on the Second Cause of Action for back pay, actual damages for loss of wages and benefits, and compensatory and punitive damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief.

**THIRD CAUSE OF ACTION FOR
DISABILITY DISCRMINATION UNDER THE NYSHRL**

52. The acts committed by AFF's, as set forth at length in paragraphs "1" through "33" of this Complaint, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Martinez based on her actual and/or perceived disability in violation of the NYSHRL.

53. At all relevant times herein, Martinez had a disability and/or was regarded as having a disability by AFF and therefore is a member of a protected class.

54. The acts of which Martinez complains of herein supporting her claims for discrimination took place as a result of her membership in a protected class and all took place while she was an employee of AFF and/or in the course of her AFF employment.

55. The acts and conduct complained of herein supporting Martinez's claims for discrimination were committed by AFF including but not limited to those who possessed and maintained direct supervisory authority over Martinez and for whose acts AFF is liable.

56. The acts and conduct complained of herein supporting Martinez's claims for discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment, including without limitation her ultimate discharge from AFF's employment.

57. As a direct and proximate result of AFF's conduct, Martinez has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of AFF's conduct upon Martinez's employment, career, and life's

11

normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

58.     AFF's discriminatory conduct so degraded Martinez physically, mentally, and emotionally that, as a proximate result of AFF's violation of her civil rights,  Martinez has suffered, and will continue to suffer, among other things, mental and emotional injuries.

59.     As a direct and proximate result of AFF's violation of Martinez's rights under the NYSHRL, AFF is liable to Martinez for lost income, benefits, and compensatory and punitive damages pursuant to 297(4) (c)(iii), §297(4) (c)(iv), and §297(9) in an amount to be determined at trial, plus costs, disbursements, and attorney's fees, pursuant to NYSHRL §297(10).

60.     Martinez also seeks the imposition of the maximum civil fines and penalties against AFF pursuant to §297(4)(c)(vi) of the NYSHRL for its willful, wanton, and malicious conduct.

61.     Martinez therefore seeks judgment against AFF on the Third Cause of Action for actual damages including loss of wages and benefits, compensatory and punitive damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and the imposition of the maximum civil fines and penalties under the NYSHRL.

**WHEREFORE,** Martinez demands judgment as follows: (i) on the First Cause of Action against AFF for back pay, actual damages for loss of wages and benefits, compensatory damages, and punitive damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief; (ii) on the Second Cause of Action against AFF for back pay, actual damages for loss of wages and benefits, compensatory damages, and punitive damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief; (iii) on the Third Cause of Action against AFF for actual

damages including loss of wages and benefits, compensatory and punitive damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and the imposition of the maximum civil fines and penalties under the NYSHRL; and (iv) such other and further relief as this Court deems just and proper.

Dated: October 15, 2021
          Mount Kisco, New York

                                                    MARKUS & SHERIDAN, LLP

                              By:      ____/s Marc Sheridan _____
                                       Marc O. Sheridan, Esq.
                                       *Attorneys for Plaintiff*
                                       116 Radio Circle, Suite 304
                                       Mount Kisco, New York 10549
                                       (914) 241-6300